# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Richmond Division



**SHANIKA K. BOYD,**

**Plaintiff,**

v.

**EQUIFAX INFORMATION SERVICES, LLC**   Civil Case No. 3:12CV830

SERVE:    Corporation Service Company, Reg. Agent
          Bank of America Center, 16th Floor
          1111 East Main Street
          Richmond, VA   23219

and

**EXPERIAN INFORMATION SOLUTIONS, INC.**

SERVE:    David N. Anthony, Registered Agent
          1001 Haxall Point
          Richmond, VA   23219

and

**TRANS UNION, LLC**

SERVE:    Corporation Service Company, Reg. Agent
          Bank of America Center, 16th Floor
          1111 East Main Street
          Richmond, VA   23219

and

**COMMONWEALTH OF VIRGINIA**
**VIRGINIA DEPARTMENT OF SOCIAL**
   **SERVICES (VDSS)**
**DIVISION OF CHILD SUPPORT**
   **ENFORCEMENT (DCSE)**

SERVE:    Martin Brown, Commissioner
          1111 East Broad Street
          Richmond, VA   23219

and

**PROFESSIONAL ACCOUNT MANAGEMENT, LLC**

SERVE:      Corporation Service Company, Reg. Agent
                  Bank of America Center, 16th Floor
                  1111 East Main Street
                  Richmond, VA   23219

and

**CREDIT COLLECTION SERVICES, INC.**

SERVE:      Secretary of the Commonwealth
                  Service of Process Department
                  Post Office Box 2452
                  Richmond, VA   23218-2452

and

**RJM ACQUISITIONS, LLC**

SERVE:      Secretary of the Commonwealth
                  Service of Process Department
                  Post Office Box 2452
                  Richmond, VA   23218-2452

and

**TRIDENT ASSET MANAGEMENT, LLC**

SERVE:      Secretary of the Commonwealth
                  Service of Process Department
                  Post Office Box 2452
                  Richmond, VA   23218-2452

and

**CAVALRY PORTFOLIO SERVICES, LLC**

SERVE:      Secretary of the Commonwealth
                  Service of Process Department
                  Post Office Box 2452
                  Richmond, VA   23218-2452

                                **Defendants.**

2

## COMPLAINT

The Plaintiff, SHANIKA K. BOYD, (hereinafter, "Plaintiff"), by counsel, and for her Complaint against Defendants, alleges as follows:

### PRELIMINARY STATEMENT

This is an action for actual, statutory and punitive damages, costs and attorney's fees brought pursuant to 15 U.S.C. § 1681 *et seq.* (Federal Fair Credit Reporting Act or "FCRA").

### JURISDICTION

1.     The jurisdiction of this Court is conferred by the FCRA, 15 U.S.C. § 1681(p) and 28 U.S.C. §1331.

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1).

### PARTIES

3.     The Plaintiff, SHANIKA K. BOYD ("Ms. Boyd"), is a natural person and a consumer as defined by 15 U.S.C. § 1681a(c).

4.     Upon information and belief, **EXPERIAN INFORMATION SOLUTIONS, INC. ("*Experian*")** is a corporation authorized to do business in the Commonwealth of Virginia through its registered offices in Richmond, Virginia.

5.     Upon information and belief, *Experian* is a "consumer reporting agency", as defined in 15 U.S.C. §1681(f).  Upon information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681(d) to third parties.

6.     Upon information and belief, *Experian* disburses such consumer reports to third parties under contract for monetary compensation.

3

7. Upon information and belief, **EQUIFAX INFORMATION SERVICES, LLC** ("*Equifax*") is a corporation authorized to do business in the Commonwealth of Virginia through its registered offices in Richmond, Virginia.

8. Upon information and belief, **TRANS UNION, LLC** ("*Trans Union*") is a corporation authorized to do business in the State of Virginia through its registered offices in Richmond, Virginia.

9. Upon information and belief, *Trans Union* is a "consumer reporting agency", as defined in 15 U.S.C. §1681(f). Upon information and belief, *Trans Union* is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681(d) to third parties.

10. Upon information and belief, *Trans Union* disburses such consumer reports to third parties under contract for monetary compensation.

11. Upon information and belief, the **VIRGINIA DEPARTMENT OF SOCIAL SERVICES (VDSS), DIVISION OF CHILD SUPPORT ENFORCEMENT ("*DCSE*")** is a government agency under the auspices of the Office of Health and Human Resources of the Commonwealth of Virginia and is tasked with the administration and enforcement of child support payments. The *DCSE* was a "furnisher" as governed by the FCRA.

12. Upon information and belief, **PROFESSIONAL ACCOUNT MANAGEMENT, LLC ("*Pro Account Management*")** is a foreign limited liability company with its principal place of business in Milwaukee, Wisconsin and is authorized to conduct business in the State of Virginia through its registered office in Richmond, Virginia. *Pro Account Management* is a debt collector and "furnisher" as governed by the FCRA.

4

13.     Upon information and belief, **CREDIT COLLECTION SERVICES, INC.** (*"Credit Collection"*) is a foreign corporation incorporated in the State of Massachusetts and which regularly conducts business in the State of Virginia. *Credit Collection* is a debt collector and "furnisher" as governed by the FCRA.

14.     Upon information and belief, **RJM ACQUISITIONS, LLC (*"RJM"*)** is a foreign limited liability company with its principal place of business in Syosset, New York and which regularly conducts business in the State of Virginia. *RJM* is a debt collector and "furnisher" as governed by the FCRA.

15.     Upon information and belief, *TRIDENT ASSET MANAGEMENT, LLC* (*"Trident"*) is a foreign limited liability company with its principal place of business in Alpharetta, Georgia and which regularly conducts business in the State of Virginia. *Trident* is a debt collector and "furnisher" as governed by the FCRA.

16.     Upon information and belief, **CAVALRY PORTFOLIO SERVICES, LLC** (*"Cavalry"*) is a foreign limited liability company with its principal place of business in Valhalla, New York and which regularly conducts business in the State of Virginia. *Cavalry* is a debt collector and "furnisher" as governed by the FCRA.

## FACTS

17.     On or around February 3, 2010, the Alexandria Juvenile & Domestic Relations Court entered a Temporary Order of Support against the Plaintiff (Case No. JA016657-01-00). The monthly child support payment was set at $65.00 per month, with the first payment due on that date. The Temporary Order included the statement: "Arrears not yet determined". Plaintiff paid the monthly $65.00 per the Court's Temporary Order.

18.     Despite the Court's Temporary Order, on February 7, 2010, the *DCSE* Arlington District Office (the office that also handles Alexandria child support cases) sent Plaintiff a Notice of Intent to report her child support arrearages to the credit reporting agencies.  The Notice stated that the Plaintiff owed a balance $5,122.95.

19.     Despite numerous direct disputes with representatives at the *DCSE* Arlington District Office to correct the error, the Plaintiff continued to receive multiple payment demands with an erroneous arrearage balance.

20.     During the month of September 2010, Plaintiff obtained a copy of her consumer credit report from CreditDiagnosis, a consumer credit agency located in Omaha, Nebraska.

21.     The CreditDiagnosis report reflected a derogatory DCSE child support account reported by *Equifax*, *Experian* and *Trans Union* with a balance due of $5,824.00.

22.     On or about October 25, 2010, Plaintiff sent a credit dispute letter to *Equifax*, *Experian* and *Trans Union* regarding the erroneous *DCSE* account.  Plaintiff enclosed a copy of the Court's Temporary Order of Support with her dispute letter to document that no arrearages had been set and requested that the derogatory *DCSE* account be removed from her credit report.

23.     On or about November 16, 2010, *Equifax* acknowledged receipt of Plaintiff's credit dispute letter. Upon information and belief, *Equifax* subsequently provided Plaintiff the results of their investigation of her dispute that "verified" or "updated" the derogatory DCSE account.

24.     On or about November 26, 2010, *Experian* provided its investigation results to Plaintiff and "updated" the derogatory DCSE account.   The account was reporting as a derogatory past due collection account in the amount of $5,815.00.

6

25.     Upon information and belief, *Trans Union* provided its investigation results to Plaintiff and "updated" or "verified" the derogatory DCSE account.

26.     On April 19, 2011, the Alexandria Juvenile & Domestic Relations Court entered the Final Order of Support against the Plaintiff (Case No. JA016657-01-01).  The Final Order affirmed the monthly child support payment of $65.00 per month and reflected that *no arrearages existed.*

27.     On or about March 13, 2012, Plaintiff obtained a copy of her credit report from *Equifax. Equifax* was reporting the *DCSE* account as a derogatory past due collection account in the amount of $3,469.00

28.     On May 9, 2012, Plaintiff forwarded a written dispute letter to *Equifax* regarding the derogatory *DCSE* account and demanded it be removed from her credit report.

29.     On June 7, 2012, Plaintiff sent a follow-up letter to *Equifax* inquiring about the status of its investigation of her May 9th dispute.

30.     On July 5, 2012, *Equifax* notified the Plaintiff that its investigation was complete and the *DCSE* account had been "verified".

31.     On or about March 13, 2012, Plaintiff also obtained a copy of her credit report from *Experian*.  The report included multiple derogatory accounts that did not belong to the Plaintiff.  On May 9, 2012, Plaintiff forwarded a written dispute letter to *Experian* to dispute accounts that did not belong to her.  Plaintiff further advised in her dispute letter that she had been the victim of identity theft.

32.     Plaintiff also learned while reviewing her March 13, 2012 *Experian* credit report, that *Experian* had furnished her consumer report to *RJM* multiple times within the past two years without her knowledge or permission *("Impermissible User")*.

33.     On June 7, 2012, Plaintiff sent a follow-up letter to *Experian* inquiring about the status of its investigation of her May 9th dispute.

34.     On or about June 12, 2012, *Experian* forwarded its Correction Summary to the Plaintiff. Experian advised that six of the disputed accounts had been deleted, however, the derogatory *Trident* and *RJM* accounts were verified and would remain on her credit report. This verification was inaccurate, as Plaintiff had never opened underlying credit accounts that resulted in the collection by *Trident* and *RJM*.

35.     On or about May 4, 2012, Plaintiff obtained a copy of her credit report from *Trans Union.* The report included multiple derogatory accounts that did not belong to the Plaintiff. On May 9, 2012, Plaintiff forwarded a written dispute letter to *Trans Union* to dispute accounts that did not belong to her. Plaintiff further advised in her dispute letter that she had been the victim of identity theft.

36.     Plaintiff also learned while reviewing her May 4, 2012 *Trans Union* credit report, that *Trans Union* had furnished her consumer report to *RJM* and *Cavalry* on multiple occasions within the past two years without her knowledge or permission *("Impermissible Users")*.

37.     On June 7, 2012, Plaintiff sent a follow-up letter to *Trans Union* inquiring about the status of its investigation of her May 9th dispute.

38.     On or about June 11, 2012, *Trans Union* forwarded the results of its investigation to the Plaintiff and advised that nine of the disputed accounts had been deleted; however, the

8

*Credit Collection* account had been verified and would remain on her credit report. It appears that one of the disputed *Pro Account Management* accounts was not investigated as a result of Plaintiff's dispute, and thus was still reporting as a derogatory collection. This verification was inaccurate, as Plaintiff had never opened underlying credit account that resulted in the collection by *Pro Account Management.*

39.     The *Impermissible Users* did not have a lawful purpose to obtain and use the Plaintiff's credit reports.

40.     These Reportings were false. The Plaintiff never signed an application for credit for any of the underlying credit accounts that  resulted in the disputed collections reporting on her credit report. Plaintiff  was never legally responsible for the repayment of these accounts. Further, the Plaintiff never authorized the above entities to receive her credit reports.

41.     Defendants each received, but ignored the Plaintiff's disputes and did refuse to delete the inaccurate information regarding the accounts from the Plaintiff's credit file.

42.     Defendants each had actual knowledge of these inaccuracies and deliberately chose to ignore and permit the reporting of the information.

43.     On numerous occasions, Defendants *Equifax, Experian* and *Trans Union* furnished the Plaintiff's consumer reports to multiple entities without permissible purpose and without reasonable procedures to obtain verification that these entities had a permissible purpose to obtain the Plaintiff's consumer report.

**COUNT ONE: VIOLATION OF FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681b(f)**
**(*RJM, TRIDENT AND CAVALRY*)**

44. Plaintiff reiterates and incorporates the allegations contained in paragraphs 1 through 38 above as if fully set out herein.

45. Defendants *RJM, Trident and Cavalry* each violated the FCRA, 15 U.S.C. §1681b(f) by obtaining and using the Plaintiff's consumer reports without a permissible purpose to do so.

46. As a result of *RJM, Trident and Cavalry's* conduct, actions and inaction, the Plaintiff suffered actual damages including without limitation, by example only and as described herein on Plaintiff's behalf by counsel: credit damage, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

47. Defendants, *RJM, Trident and Cavalry's* conduct, actions and inaction were willful, rendering each Defendant individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, *RJM, Trident and Cavalry* were negligent, entitling the Plaintiff to recover under 15 U.S.C. §1681o.

48. The Plaintiff is entitled to recover actual damages, statutory damages, costs and attorneys' fees, individually from each of the Defendants, *RJM, Trident and Cavalry's* in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

## COUNT TWO: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. §1681b
### *(EQUIFAX, EXPERIAN and TRANS UNION)*

49. Plaintiff reiterates and incorporates the allegations contained in paragraphs 1 through above as if fully set out herein.

50. Defendants, *Equifax, Experian* and *Trans Union* violated the FCRA, 15 U.S.C. §1681b by providing the Plaintiff's consumer reports without a permissible purpose to do so.

10

51.     As a result of *Equifax, Experian* and *Trans Unions* 's conduct, actions and inaction, the Plaintiff suffered actual damages including without limitation, by example only and as described herein on Plaintiff's behalf by counsel:   credit damage, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

52.     *Equifax, Experian* and *Trans Union* 's conduct, actions and inactions were willful, rendering each Defendant individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681.  In the alternative, *Equifax, Experian* and *Trans Union* were negligent, entitling the Plaintiff to recover under 15 U.S.C. §1681o.

53.     The Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from *Equifax, Experian* and *Trans Union* each in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and/or 15 U.S.C. §1681o.

### COUNT THREE: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. §1681e(a)
### (*EQUIFAX, EXPERIAN and TRANS UNION*)

54.     Plaintiff reiterates and incorporates the allegations contained in paragraphs 1 through  above as if fully set out herein.

55.     Defendants, *Equifax, Experian* and *Trans Union* each violated the FCRA, 15 U.S.C. §1681e(a) by providing the Plaintiff's consumer reports without reasonable procedures to assure the proper use of and lawful purpose for such reports.

56.     As a result of *Equifax, Experian* and *Trans Union* 's conduct, actions and inaction, the Plaintiff suffered actual damages including without limitation, by example only and as described herein on Plaintiff's behalf by counsel:   credit damage, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

11

57.     *Equifax, Experian* and *Trans Union* 's conduct, actions and inactions were willful, rendering each Defendant individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681.  In the alternative, they were negligent, entitling the Plaintiff to recover under 15 U.S.C. §1681o.

58.     The Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from *Equifax, Experian* and *Trans Union* each in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and/or 15 U.S.C. §1681o.

## COUNT FOUR: VIOLATION OF FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681e(b)
### (EQUIFAX, EXPERIAN and TRANS UNION)

59.     Plaintiff realleges and incorporates all other factual allegations set forth in the Complaint.

60.     Defendants, *Equifax, Experian and Trans Union* violated 15 U.S.C. §1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit report and credit files it published and maintained.

61.     As a result of the conduct, actions and inactions of each of the Defendants, *Equifax, Experian and Trans Union*, the Plaintiff suffered actual damages including without limitation, by example only and as described herein on Plaintiff's behalf by counsel:  credit damage, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

62.     *Equifax, Experian and Trans Union's* conduct actions and inactions were willful, rendering each Defendant individually liable for punitive damages in an amount to be

12

determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, *Equifax, Experian and Trans Union* were negligent, which entitles Plaintiff to recovery under 15 U.S.C. §1681o.

63.     The Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from *Equifax, Experian and Trans Union* in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

## COUNT FIVE: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681i(a)(1)
### *EQUIFAX, EXPERIAN, TRANS UNION*)

64.     Plaintiff realleges and incorporates all other factual allegations set forth in the Complaint.

65.     Defendants, *Equifax, Experian and Trans Union* each violated 15 U.S.C. §1681i(a)(1) on multiple occasions by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information or delete the item from Plaintiff's credit file.

66.     As a result of the conduct, actions and inactions of the Defendants, *Equifax, Experian and Trans Union.* the Plaintiff suffered actual damages including without limitation, by example only and as described herein on Plaintiff's behalf by counsel:   credit damage, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

67.     Defendants, *Equifax, Experian and Trans Union's* conduct, actions and inactions were willful rendering each Defendant individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative Defendants, *Equifax, Experian and Trans Union* were negligent, which entitles Plaintiff to recovery under 15 U.S.C. §1681o.

68.     The Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Defendants, *Equifax, Experian and Trans Union* in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

### COUNT SIX: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681i(a)(2)(A)
### *(EQUIFAX, EXPERIAN AND TRANS UNION)*

69.     Plaintiff  realleges and incorporates all other factual allegations set forth in the Complaint.

70.     Defendants, *Equifax, Experian and Trans Union* each violated 15 U.S.C. §1681i(a)(2)(A) on multiple occasions by failing to provide *DCSE* with all the relevant information regarding Plaintiff's disputes.

71.     As a result of the conduct, actions and inactions of the Defendants, *Equifax, Experian and Trans Union*, the Plaintiff suffered actual damages including without limitation, by example only and as described herein on Plaintiff's behalf by counsel:   credit damage, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

72.     Defendants, *Equifax, Experian and Trans Union's* conduct, actions and inactions were willful, rendering each Defendant individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C.  § 1681n. In the alternative, Defendants, *Equifax, Experian and Trans Union* were negligent entitling the Plaintiff to recovery under 15 U.S.C. §1681o.

73.     The Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Defendants, *Equifax, Experian and Trans Union* in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

## COUNT SEVEN: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681i(a)(4)
### *(EQUIFAX, EXPERIAN AND TRANS UNION)*

74.     Plaintiff realleges and incorporates all other factual allegations set forth in the Complaint.

75.     Defendants, *Equifax, Experian and Trans Union* each violated 15 U.S.C. §1681i(a)(4) on multiple occasions by failing to review and consider <u>all</u> relevant information submitted by Plaintiff.

76.     As a result of the conduct, actions and inactions of Defendants, *Equifax, Experian and Trans Union's* the Plaintiff suffered actual damages including without limitation, by example only and as described herein on Plaintiff's behalf by counsel:   credit damage, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

77.     Defendants, *Equifax, Experian and Trans Union's* conduct, actions and inactions were willful, rendering each Defendant liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative Defendants, *Equifax, Experian and Trans Union* were negligent, entitling Plaintiff to recover under 15 U.S.C. §1681o.

78.     The Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Defendants, *Equifax, Experian and Trans Union* in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

## COUNT EIGHT: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681i(a)(5)(A)
### *(EQUIFAX, EXPERIAN AND TRANS UNION)*

79.     Plaintiff realleges and incorporates all other factual allegations set forth in the Complaint.

80.     Defendants, *Equifax, Experian and Trans Union* each violated 15 U.S.C. §1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit files or modify the item of information upon a lawful reinvestigation.

81.     As a result of the conduct, actions and inactions of Defendants, *Equifax, Experian and Trans Union* the Plaintiff suffered actual damages, including without limitation, by example only and as described herein on Plaintiff's behalf by counsel:   credit damage, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

82.     Defendants, *Equifax, Experian and Trans Union's* conduct, actions and inactions were willful, rendering each Defendant individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative Defendants, *Equifax, Experian and Trans Union* were negligent entitling Plaintiff to recover under 15 U.S.C. §1681o.

83.     The Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Defendants, *Equifax, Experian and Trans Union* in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

## COUNT NINE: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681s-2(b)(1)(A)
### *(DCSE, RJM, TRIDENT, PRO ACCOUNT MANAGEMENT, CREDIT COLLECTION)*

84.     Plaintiff realleges and incorporates all other factual allegations set forth in the Complaint.

85.     On one or more occasions within the past two years, by example only and without limitation, *DCSE, Pro Account Management, RJM, Credit Collection and Trident* violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's disputes.

86.     When the Plaintiff mailed her disputes to the consumer reporting agencies ("CRAs"), they use a dispute system named, "e-Oscar", which has been adopted by the credit reporting agencies and by their furnisher-customers such as *DCSE, Pro Account Management, RJM, Credit Collection and Trident*. It is an automated system and the procedures used by the CRAs are systemic and uniform.

87.     When *Equifax, Experian or Trans Union* receives a consumer dispute, it (usually via an Indian outsource vendor), translates that dispute into an "ACDV" form.

88.     Upon information and belief, the ACDV form is the method by which *DCSE, Pro Account Management, RJM, Credit Collection and Trident* have elected to receive consumer disputes pursuant to 15 U.S.C. § 1681i(a).

89.     On information and belief, the Plaintiff alleges that to date *DCSE, Pro Account Management, RJM, Credit Collection and Trident* have never complained to the CRAs about the amount of information they receive regarding a consumer dispute through the e-Oscar system or through ACDVs.

90.     If *DCSE, Pro Account Management, RJM, Credit Collection and Trident* receive a consumer dispute ACDV form, they are aware that they may also contact the CRA that sent it to obtain more information regarding a consumer's dispute.

91.     Based on the manner in which *Equifax, Experian and Trans Union* responded to the Plaintiff's disputes, representing that *DCSE, Pro Account Management, RJM, Credit*

17

*Collection and Trident* had "verified" the supposed accuracy of its reporting, Plaintiff alleges that *Equifax, Experian and Trans Union* did in fact forward the Plaintiff's dispute via an ACDV to *DCSE, Pro Account Management, RJM, Credit Collection and Trident*

92.     *DCSE, Pro Account Management, RJM, Credit Collection and Trident* understood the nature of the Plaintiff's dispute when they received the ACDV from the credit bureaus.

93.     When *DCSE, Pro Account Management, RJM, Credit Collection and Trident* received the ACDV from the credit reporting agencies, they as well could have reviewed their own system and previous communications with the Plaintiff and discovered additional substance of the Plaintiff's dispute. *DCSE* also should have reviewed the Court Orders that were entered in the Alexandria Juvenile & Domestic Relations Court.

94.     Notwithstanding the above, *DCSE, Pro Account Management, RJM, Credit Collection and Trident* follow a standard and systemically unlawful process when it receives the ACDV dispute. Basically, all *DCSE, Pro Account Management, RJM, Credit Collection and Trident* do is review its own internal computer screen for the account and repeat back to the ACDV system the same information that *DCSE, Pro Account Management, RJM, Credit Collection and Trident* already had reported to the CRAs.

95.     When *DCSE, Pro Account Management, RJM, Credit Collection and Trident* receive a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether or not the information already in their computer system is itself accurate.

96.     As a result of *DCSE, Pro Account Management, RJM, Credit Collection and Trident's* violations of 15 U.S.C. §1681s-2(b)(1)(A), Plaintiff suffered actual damages, including

18

but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

97.    The violations by *DCSE, Pro Account Management, RJM, Credit Collection and Trident* were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

98.    The law in this District, the Fourth Circuit and even nationally has long ago been set to require a detailed and searching investigation by a creditor when it receives a consumer's FCRA dispute through a CRA.

99.    *DCSE, Pro Account Management, RJM, Credit Collection and Trident* was aware of the *Johnson v. MBNA* FCRA decision by the Fourth Circuit when it followed the ACDV procedures used regarding the Plaintiff's dispute.

100.    On information and belief, the Plaintiff alleges that the procedures followed regarding the Plaintiff's FCRA disputes through e-Oscar were the procedures that *DCSE, Pro Account Management, RJM, Credit Collection and Trident* intended its employees or agents to follow.

101.    On information and belief, the Plaintiff alleges that *DCSE, Pro Account Management, RJM, Credit Collection and Trident's* employees or agents did not make a mistake (in the way in which he or she followed *DCSE, Pro Account Management, RJM, Credit Collection and Trident's* procedures) when he or she received, processed and responded to the CRAs ACDVs.

102.   On information and belief, the Plaintiff alleges that *DCSE, Pro Account Management, RJM, Credit Collection and Trident* have not materially changed its FCRA investigation procedures after learning of their failures in this case.

103.   In the alternative, *DCSE, Pro Account Management, RJM, Credit Collection and Trident* were negligent, which entitles Plaintiff to recovery under 15 U.S.C. §1681o.

104.   Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from *DCSE, Pro Account Management, RJM, Credit Collection and Trident* in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

## COUNT TEN: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681s-2(b)(1)(B)
### (*DCSE, RJM, TRIDENT, PRO ACCOUNT MANAGEMENT, CREDIT COLLECTION*)

105.   Plaintiff realleges and incorporates all other factual allegations set forth in the Complaint (particularly though not limited to as pled in the "Fact" section of the Complaint and the previous Count).

106.   On one or more occasions within the past two years, by example only and without limitation, *DCSE, Pro Account Management, RJM, Credit Collection and Trident* violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer report agencies.

107.   As Plaintiff detailed in Count Nine, *DCSE, Pro Account Management, RJM, Credit Collection and Trident* have elected to use the e-Oscar system for its FCRA disputes received through the CRAs.

108.   *DCSE, Pro Account Management, RJM, Credit Collection and Trident* are aware of the meaning of the several dispute codes used by the CRAs in e-Oscar.

109. *DCSE, DCSE, Pro Account Management, RJM, Credit Collection and Trident* do not contend that the ACDV system is an inadequate means to receive FCRA disputes through the CRAs.

110. *DCSE, Pro Account Management, RJM, Credit Collection and Trident* understood the Plaintiff's disputes and that she was not responsible to pay the disputed debts.

111. Nevertheless, *DCSE, Pro Account Management, RJM, Credit Collection and Trident* ignored such information and instead simply regurgitated the same identifying information they had previously reported to the CRAs.

112. As a result of *DCSE, Pro Account Management, RJM, Credit Collection and Trident's* violations of 15 U.S.C. §1681s-2(b)(1)(B), Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

113. The violations by *DCSE, Pro Account Management, RJM, Credit Collection and Trident* were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, *DCSE, Pro Account Management, RJM, Credit Collection and Trident* were negligent, which entitles Plaintiff to recover under 15 U.S.C. §1681o.

114. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from *DCSE, Pro Account Management, RJM, Credit Collection and Trident* in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

**COUNT ELEVEN: VIOLATION OF FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681s-2(b)(1)(C) and (D)**
**(*DCSE, PRO ACCOUNT MANAGEMENT, RJM, CREDIT COLLECTION AND TRIDENT*)**

21

115.    Plaintiff realleges and incorporates all other factual allegations set forth in the Complaint (particularly though not limited to as pled in the "Fact" section of the Complaint and the previous two Counts).

116.    On one or more occasions within the past two years, by example only and without limitation, *DCSE, Pro Account Management, RJM, Credit Collection and Trident* violated 15 U.S.C. § 1681s-2(b)(1)(C) and (D) by publishing the *DCSE, Pro Account Management, RJM, Credit Collection and Trident's* representations within Plaintiff's credit files with *Equifax, Experian and Trans Union* without also including a notation that these debts were disputed and by failing to correctly report results of an accurate investigation to each credit reporting agency.

117.    Specifically, *DCSE, Pro Account Management, RJM, Credit Collection and Trident* failed to add the "XB" code to the CCC (Compliance Condition Code) field in the ACDV dispute forms when it responded to the CRAs.

118.    On information and belief, the Plaintiff alleges that *DCSE, Pro Account Management, RJM, Credit Collection and Trident* rarely if ever adds the XB code or other notation that an account is disputed when it responds to e-Oscar ACDVs.

119.    Furthermore, *DCSE* knew that the Plaintiff disputed the subject account because she had previously disputed the debt directly to *DCSE.*

120.    The Plaintiff's disputed were, at a minimum, bona fide.

121.    As a result of *DCSE, Pro Account Management, RJM, Credit Collection and Trident's* violations of 15 U.S.C. §1681s-2(b)(1)(C) and (D), Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

22

122. The violations by **DCSE, Pro Account Management, RJM, Credit Collection and Trident** were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

123. **DCSE, Pro Account Management, RJM, Credit Collection and Trident** was aware of the *Saunders v. B.B. and T.* FCRA decision by the Fourth Circuit when it followed the ACDV procedures used regarding the Plaintiff's dispute.

124. On information and belief, the Plaintiff alleges that the procedures followed regarding the Plaintiff's FCRA disputes through e-Oscar were the procedures that **DCSE, Pro Account Management, RJM, Credit Collection and Trident** intended its employees or agents to follow.

125. On information and belief, the Plaintiff alleges that **DCSE, Pro Account Management, RJM, Credit Collection and Trident's** employee or agent did not make a mistake (in the way in which he or she followed **DCSE, Pro Account Management, RJM, Credit Collection and Trident's** procedures) when he or she received, processed and responded to the CRAs' ACDVs and did not include the XB code in the CCC field.

126. On information and belief, the Plaintiff alleges that **DCSE, Pro Account Management, RJM, Credit Collection and Trident** have not materially changed its FCRA investigation procedures regarding the CCC field in ACDVs after learning of its failures in this case.

127. In the alternative, **DCSE, Pro Account Management, RJM, Credit Collection and Trident** were negligent, which entitles Plaintiff to recovery under 15 U.S.C. §1681o.

23

128.    Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from *DCSE, Pro Account Management, RJM, Credit Collection and Trident* in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

WHEREFORE, Plaintiff demands judgment for actual, statutory and punitive damages against Defendants, jointly and severally; for their attorneys' fees and costs; for prejudgment and post-judgment interest at the judgment rate, and such other relief the Court deems just and proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully Submitted,

**SHANIKA K. BOYD**

By _____
Counsel

Kristi Cahoon Kelly, VSB#72791
Andrew J. Guzzo, VSB #82170
SUROVELL, ISAACS, PETERSEN & LEVY, PLC
4010 University Drive, Second Floor
Fairfax, Virginia 22030
(703) 251-5400 – Telephone
(703) 591-9285 – Facsimile
Email: kkelly@siplfirm.com
Email: aguzzo@siplfirm.com

Leonard A. Bennett, VSB#37523
Susan M. Rotkis, VSB#40693
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd. 1-A
Newport News, VA 23601
(757) 930-3660 – Telephone
(757) 930-3662 – Facsimile
Email: lenbennett@clalegal.com
Email: srotkis@clalegal.com
*Counsel for Plaintiff*

24